UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW CHARLES BOYDE,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security*,<br><br>    Defendant. | Civil Action No. 17-cv-11316-ADB |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Matthew Charles Boyde ("Mr. Boyde" or "Claimant") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Currently pending are Claimant's motion to reverse the Commissioner's decision denying his disability benefits [ECF No. 13], and the Commissioner's cross-motion for an order affirming the decision. [ECF No. 15]. For the reasons described herein, the Court finds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence and therefore **DENIES** Claimant's motion to reverse and remand and **ALLOWS** the Commissioner's motion to affirm.

## I. BACKGROUND

### A. Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for

covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

### B. Procedural Background

Claimant filed his applications for SSDI and SSI benefits on July 24, 2014. [R. 20, 210−26].[1] He alleged that he became disabled on December 31, 2012, due to arthritis, carpal tunnel syndrome, post-traumatic stress disorder ("PTSD") with hypervigilance and anxiety disorder, and dyslexia. [R. 210, 217, 258]. His date last insured was September 30, 2015. [R. 21].

The Social Security Administration (the "SSA") denied Claimant's applications for SSI and SSDI benefits on September 25, 2014 [R. 134−39], and again upon reconsideration on December 3, 2014. [R. 142−47]. Thereafter, Claimant requested an administrative hearing [R. 148], and a hearing took place before ALJ Daniel J. Driscoll on January 14, 2016. [R. 39]. Claimant, who was represented by counsel, appeared and testified at the hearing. Id. On February 24, 2016, the ALJ issued a decision finding that Claimant was not disabled. [R. 33]. The SSA Appeals Council denied Claimant's Request for Review on May 15, 2017. [R. 1−6]. On July 18, 2017, Claimant filed a timely complaint with this Court, seeking review of the Commissioner's decision pursuant to section 205(g) of the Act. [ECF No. 1].

### C. Factual Background

Claimant was born in September 1983 and was 29 years old on the alleged onset date. [R. 210, 217]. He lives in Plymouth, Massachusetts with his wife and two children. [R. 44−45]. Claimant attended school through the ninth grade and has previously worked as a cashier, food preparer and dishwasher, landscaper, and gas station attendant. [R. 46–58, 259].

---

[1] References to pages in the Administrative Record, which were filed electronically at ECF No. 10, are cited as "[R. __ ]."

### D. The ALJ's Decision

On February 24, 2016, the ALJ issued a decision finding that Claimant was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. [R. 33]. At step one, he found that Claimant had not engaged in substantial gainful activity since the alleged onset date. [R. 22]. He next concluded that Claimant had the severe impairments of arthralgia, osteitis, asthma, depression, and anxiety, but that these impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. [R. 23]. At step four, the ALJ determined that Claimant had the RFC to:

> perform up to medium work as defined in 20 CFR [§] 404.1567(c) and 416.967(c) except that he should avoid extremes of temperature, humidity, as well as concentrated exposure to pulmonary irritants, such as fumes, dusts, gases, chemicals, and should avoid hazards such as moving machinery, unprotected heights, and slippery or uneven surfaces. Additionally, he is limited to routine tasks with no detailed instructions meaning no more than [Specific Vocational Preparation Levels 1 or 2] work, no more than occasional workplace changes, and he could not tolerate more than occasional interaction with the public, supervisors, or coworkers meaning that successful performance of job duties would involve working primarily with things and not people.

[R. 25]. At step five, the ALJ concluded that Claimant was unable to perform past relevant work but was capable of performing other jobs existing in the national economy such as Laundry Worker I, Laundry Worker II, and Mail Clerk. [R. 32−33]. Therefore, Claimant was found not disabled since the alleged onset date. [R. 33].

### E. Relevant Medical History

Claimant only challenges the ALJ's decision with respect to his mental impairments and does so on the sole ground that the ALJ failed to afford the opinions of a psychiatrist, Mary Barkalow, M.D., the weight of a treating source. [ECF No. 14 at 5−8]. Claimant received mental health treatment at South Bay Mental Health Center where Bruce Barrett, M.A. served as Claimant's therapist [R. 43−44, 777, 791, 877, 889], Sandra Korona, LMHC acted as Mr.

4

Barrett's supervisor [R. 577−587, 742−56, 781−90, 885, 897, 904], and Dr. Barkalow cosigned certain forms or evaluations completed by Mr. Barrett. [R. 757−59, 1058, 1060−62].[2]

Given that the instant appeal concerns one narrow issue, the Court briefly summarizes Claimant's medical history by incorporating the relevant portions of the ALJ's decision below:

> [T]he record reflects that [Claimant] was seen for an initial intake at South Bay Mental Health in September 2013 . . . . He reported anger, issues with stress management, isolating behavior, anxiety as well as social anxiety, and limited activities related mostly to childcare . . . . On mental status examination, he was cooperative and relaxed with normal eye contact, speech, and mood, persecutory and aggressive thoughts, no suicidal ideation, normal thought process, impaired immediate and recent memory, and normal intellectual functioning . . . . [Claimant] was assessed with PTSD, assigned a Global Assessment of Functioning ("GAF") of 52, and noted to have a good prognosis due to motivation for therapy . . . . Progress notes from October to December 2013 detail that [Claimant] reported feeling better by October, had some increased stress related to childcare issues, and noted having an active holiday with family . . . . Additional progress notes from February to August 2014 detail continued therapy with some symptom exacerbation in June 2014 . . . . Later, in a Psychiatric Disorder Form, [Claimant's] therapist Bruce Barrett, MA and supervising therapist Mary Barkalow, LMHC noted that [Claimant] was last seen in August 2014 and that he had been sent a letter to re-establish care . . . . They noted that [Claimant was] socially isolated but was not formally agoraphobic and had no observed deficits in attention and concentration or any reported memory deficits . . . . They further detailed that [Claimant] reported limited ability to maintain emotional control that severely curtailed work capacity by report; had stable functioning despite stress, but limited ability to care for his children and home; was highly sensitive to interactions with strangers; and cared for chores and his children at home and avoided all other stresses . . . . It was noticed that [Claimant's] prognosis was good with renewed compliance . . . .
>
> [Claimant] returned to therapy after a brief lapse in September 2014 . . . . In October 2014, [Claimant] underwent a medication management evaluation . . . . [Claimant] reported PTSD, trauma history, and no current psychiatric medications . . . . On mental status examination, he was casual and groomed with normal speech and thought process, focused and engaged, had no suicidal ideation, good insight and judgment, intact memory, and anxious affect . . . . [Claimant] was assessed with PTSD and advised to follow-up . . . . Treatment notes detail that [Claimant] did not immediately follow-up with medication management, but continued to attend therapy . . . . Progress notes through November 2014 detail stress regarding a recent

---

[2] Claimant also saw Julie Catineau, N.P. at South Bay Mental Health Center. See, e.g., [R. 765−67, 770−72, 906−09, 910−15, 917−21].

job loss as well as severe anxiety and grief in the setting [of] his brother's recent death . . . . [Claimant] returned for medication management in late November 2014 . . . . He reported anxiety attacks and continued grief over his brother's death . . . . On mental status examination, he was well groomed, focused and engaged with normal speech and thought process, tearful affect, no suicidal ideation, and intact memory . . . . At that time, [Claimant] was started on Ativan . . . .

Going forward, treatment notes indicate continued therapy and medication management with periods of symptom exacerbation due to stressors. Progress notes through December 2014 detail [that Claimant] endorsed intense grief regarding his brother's death and had some increased anxiety due to family tensions regarding the circumstances of his death . . . . At medication management follow-up in late December 2014, [Claimant] reported running out of Ativan early, but that therapy was going well . . . . He further noted ongoing grief and that he considered this a tough time of year . . . . On mental status examination, he had an anxious affect, normal speech and thought process, and no suicidal ideation . . . . [Claimant] was started on Prozac and Clonidine and advised to continue Ativan . . . . January 2015 progress notes indicate that [Claimant] reported starting Prozac and finding Ativan helpful . . . . He presented as calmer with an improved mood . . . . Subsequent notes in February 2015 detail that [Claimant's] GAF score dropped to 45 due to being housebound because of the weather, but that he was otherwise stable . . . . At his medication management visit in March 2015, [Claimant] requested tapering off Ativan . . . . He reported poor sleep with recurring nightmares and being easily startled . . . . On mental status examination, he was focused and engaged with slightly constricted but full range affect, normal speech and thought process, and intact memory . . . . [Claimant] was advised to begin an Ativan taper and increase his Clonidine dosage . . . .

Follow-up notes in March and April 2015 detail new sadness and grief regarding his father's recent death . . . . [Claimant] presented as quiet and somber, but focused . . . . On mental status examination, he had a tearful and agitated affect, normal speech and thought process, and intact memory . . . . He was advised to continue tapering Ativan . . . . By late April 2014, [Claimant] reported a recent fight concerning his father and brother's death, but that overall he was doing well . . . . On mental status examination, he was pleasant and cooperative, focused and engaged, with normal speech and thought process, intact memory, and full range affect . . . . He was assessed as stable and improving and advised to continue his medications . . . . Thereafter, the record indicates that [Claimant] continued medication management with his primary care physician. Treatment notes in July 2015 detail he was assessed with depression and anxiety and advised to continue Fluoxetine and Lorazepam . . . . At follow-up in October 2015, [Claimant] requested to discharge Lorazepam, as he did not realize it was a controlled medication . . . . He was advised to decrease Lorazepam . . . . There are no further mental health treatment notes.

[R. 27−29] (citations omitted).

6

### F. Records of Dr. Barkalow and Mr. Barrett

Claimant's appeal specifically concerns the ALJ's evaluation of the medical records of Dr. Barkalow and Mr. Barrett. As described below in more detail, on November 21, 2014, Dr. Barkalow cosigned a Psychiatric Disorder form executed by Mr. Barrett. [R. 757−59]. The form indicates that Claimant has a GAF score of 45 and a long history of stress, anxiety, and trauma. [R. 757]. Moreover, it reported that Claimant had no deficits in cognition or memory and did not require excessive supervision, but that Claimant described anxiety interfering with his social concentration and having a limited ability to maintain emotional control, which severely curtailed his capacity to work. [R. 757−58].

On January 25, 2015, Dr. Barkalow cosigned a Disability Listing form completed by Mr. Barrett which stated that Claimant met the 12.06 listing for anxiety-related disorders, and that his anxiety resulted in marked restriction of activities of daily living, social functioning, and concentration, persistence, or pace. [R. 1058]. On that same day, Dr. Barkalow also cosigned a Mental Residual Functional Capacity ("RFC") Assessment executed by Mr. Barrett. [R. 1060−62]. The RFC assessment noted, among other things, that Claimant's "historical and current bouts of reported and observed severe social anxiety present marked functional deficit [regarding] employment and social activity." [R. 1062].

The ALJ weighed the evidence concerning Claimant's mental health impairments, including the evidence provided by Dr. Barkalow and Mr. Barrett, as follows:

> Overall, [Claimant's] treatment notes do reflect some moderately rated symptoms of psychiatric impairment, but they do not reflect symptoms on a disabling level. Instead, they tend to portray [Claimant] as an individual with a reported traumatic history that experiences some depression and anxiety in the context of family and relationship stressors with improvement when appropriately treated and relative overall stability over the longitudinal medical evidence . . . .

7

Moreover, [Claimant's] allegations that his impairments adversely affect his activities and ability to work are considerably more restrictive than what is established by the medical evidence and the record as a whole. Despite his impairments, [Claimant] reported biking, attending shows at a bar once a month, caring for his children, preparing meals, performing household chores, shopping in stores, helping his brother move, spending time with family, and playing video games three times a week . . . . Thus, while I find that [Claimant] has impairments that more than minimally affect his ability to engage in work related activities, for all of the above reasons, I cannot accept [Claimant] as a fully credible witness regarding the disabling nature of his symptoms . . . .

In terms of [Claimant's] severe mental impairments, I give partial weight to the state agency psychological assessments . . . to the extent they noted that [Claimant] was not capable of frequent public interaction. However, based on the record as a whole, I found [Claimant] further limited in his ability to interact frequently with coworkers and supervisors and capable of only simple, routine tasks.

I give little weight to the November 2014 Psychiatric Disorder Form, January 2015 Disability Listing Form, and Mental [RFC] Assessment completed by Bruce Barrett, MA and Mary Barkalow, LMHC . . . . Although Mr. Barrett and Ms. Barkalow are not considered "acceptable medical sources" under the Social Security laws and regulations, I nonetheless take the opinions into account in rendering a decision (SSR 06-3p). In the Psychiatric Disorder Form, they noted the diagnosis of PTSD and a GAF of 45 . . . .

In the Disability Listing Form, they noted generalized persistent anxiety associated with motor tension, apprehensive expectation, vigilance and/or scanning, persistent irrational fear of an object or situation resulting in compelling desire to avoid that object or situation, and recurrent and severe panic attacks. They further noted marked limitations in activities of daily living, social functioning, and concentration, persistence, and pace . . . .

In the Mental [RFC] Assessment, they noted <u>marked</u> limitations in his ability to maintain attention and concentration for an extended period, complete a normal workday without interruptions from psychiatrically based symptoms, interact appropriately with the general public, and respond appropriately to changes in the work setting; and <u>moderate</u> limitations in his ability to work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Lastly, they noted that [Claimant's] severe social anxiety presented marked functional deficits regarding employment and social activity . . . .

In evaluating the statements, I note that in the Psychiatric Disorder Form, [Claimant's] therapist references his subjective statements and self-reported limitations instead of objective findings observed during treatment. Further, the

only occasion when observations are relied upon is to note that [Claimant] had no deficits in cognition. Additionally, the contemporaneous treatment notes detail that by January 2015 [Claimant] had improved with medication and continued therapy. Similarly, the January 2015 assessments are not supported by the longitudinal record. Treatment notes show improvement in mood by April 2015 with stable mental status . . . . Further, [Claimant] has consistently presented as focused and engaged with intact memory and cognitive functioning that is inconsistent with a finding of marked limitations in concentration, persistence, and pace. Further, [Claimant] reported various activities, including caring for his children, preparing meals, performing household chores, and socializing with family. The statements and opinions of Mr. Barrett and Ms. Barkalow are given less weight to the extent they assert greater limitations than suggested by the contemporaneous medical evidence and the record as a whole.

In giving weight to the State agency consultants involved in the present case, I note that findings of fact made by state agency medical professionals regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence by a non-examining source in the absence of other fully credible medical opinions (SSR 96-6p). I have given weight to the opinions of the State agency consultants involved in the present case, but only to the extent that the opinions are consistent with the evidence of record.

[R. 29−31] (citations omitted).

## II. STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner of Social Security by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). The district court may take a number of actions with respect to the Commissioner's decision. First, under sentence four of section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (quoting 42 U.S.C. § 405(g)). If a claimant presents

new evidence to the court that was not contained within the administrative record, the court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of Section 205(g). Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992). Sentence six permits the court to remand a case to the Commissioner for further proceedings and order the evidence to be added to the record for consideration. See 42 U.S.C. § 405(g) ("The court may…at any time order additional evidence to be taken before the Commissioner…but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the court's review of the Commissioner's conclusions of law is de novo. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, (1938)). The Court "must affirm the [Commissioner's] resolution, *even if the record arguably could justify a different conclusion*, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st

Cir. 1987) (emphasis added) (citing <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981)).

## III. DISCUSSION

The critical evidence for the purposes of Claimant's appeal includes the Psychiatric Disorder form [R. 757−59], Disability Listing form [R. 1058], and Mental RFC Assessment [R. 1060−62], all of which were executed by Claimant's therapist, Mr. Barrett, and cosigned by Dr. Barkalow. Claimant argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to attribute the evidence at issue to Dr. Barkalow and to afford them the weight of a treating source. [ECF No. 14 at 7]. The Commissioner concedes that the ALJ erroneously concluded that Dr. Barkalow was a non-acceptable medical source and referred to her as a licensed mental health counselor as opposed to a psychiatrist. [ECF No. 16 at 6–7]. The Commissioner nonetheless asserts that the ALJ properly weighed the evidence because although Dr. Barkalow was an acceptable medical source, her involvement as a mere cosigner of Mr. Barrett's evaluations does not make her a treating source, meaning her opinions are not entitled to special consideration. <u>Id.</u>

Under the regulations that were effective at the time of Claimant's application, "[o]nly licensed physicians, licensed or certified psychologists, and other 'acceptable medical sources,' . . . qualify as 'treating sources,' whose opinions generally are entitled to more weight and, under certain circumstances, can be afforded controlling weight." <u>Barowsky v. Colvin</u>, No. 15-cv-30019-KAR, 2016 WL 634067, at *6 (D. Mass. Feb. 17, 2016) (quoting 20 C.F.R. §§ 404.1502, 404.1513). As a psychiatrist, Dr. Barkalow is an acceptable medical source. <u>See</u> <u>Bowers v. Astrue</u>, No. 11-cv-40229-TSH, 2014 WL 3530797, at *1 (D. Mass. July 14, 2014) ("[Plaintiff] is correct that her psychiatrist . . . who diagnosed her with bipolar disorder, is an acceptable

11

medical source." (internal quotation marks omitted)); Roberts v. Astrue, No. 10-cv-10664-PBS, 2011 WL 3163257, at *7 (D. Mass. July 27, 2011) ("'Acceptable' medical sources include . . . licensed or certified psychiatrists.").

A therapist such as Mr. Barrett, however, is not an acceptable medical source. See Watkins v. Berryhill, No. 16-cv-30117-KAR, 2017 WL 4365158, at *14 (D. Mass. Sept. 29, 2017) ("Because . . . a therapist . . . is not an 'acceptable medical source' under the regulations, [his or her] opinions are not entitled to controlling weight."); Lobov v. Colvin, No. 12-cv-40168-TSH, 2014 WL 3386567, at *13 (D. Mass. June 23, 2014) ("This Court does not consider therapists to be acceptable medical sources within the meaning of the Code of Federal Regulations and an ALJ is granted wide discretion in weighing a therapist's opinion."). An ALJ may consider a therapist's opinion as an "other" medical source. Resto v. Colvin, No. 15-cv-30012-MGM, 2016 WL 1384779, at *4 (D. Mass. Apr. 7, 2016) (therapist's opinion treated as "other medical source"); see Nadeau v. Colvin, No. 14-cv-10160-FDS, 2015 WL 1308916, at *8 (D. Mass. Mar. 24, 2015) (same). When weighing the opinion of an "other" or non-acceptable medical source, an ALJ "need not provide 'good reasons' for discounting the opinion . . . as he or she must if addressing the opinion of an 'acceptable' treating source." Guest v. Berryhill, No. 16-cv-0028-JHR, 2017 WL 2414468, at *7 (D. Me. June 2, 2017); see Johnson v. Colvin, 204 F. Supp. 3d 396, 410 (D. Mass. 2016) ("The opinions of other medical sources are not entitled to controlling weight and an [ALJ] is not required to provide 'good reasons' for the weight assigned to such opinions."). The ALJ "need only 'explain the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Guest, 2017 WL 2414468, at *7 (quoting SSR 06-03p); see

12

Gagnon v. Astrue, No. 11-cv-10481-PBS, 2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012) ("When deciding how much weight to give a therapist's opinion, an ALJ is only constrained by the duty to reach a conclusion supported by substantial evidence in the record.").[3]

Here, Claimant contends that the relevant evidence should be construed as the treating source opinion of Dr. Barkalow because she cosigned the forms that were completed by Mr. Barrett. "It is well-settled that . . . [a] physician's sign-off on a [non-acceptable medical source's] opinion" does not transform that opinion into an acceptable medical source. Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *11 (D.R.I. Mar. 3, 2015); see Lobov, 2014 WL 3386567, at *14 n.8 (signature of acceptable medical source on opinion of other source "had no bearing on the ALJ's discretion to assign weight" to other source opinion). The record lacks any evidence that Dr. Barkalow had an "ongoing treatment relationship" with Claimant or even examined Claimant. See Coppola v. Colvin, No. 12–492, 2014 WL 677138, at *9 (D.N.H. Feb. 21, 2014) (quoting 20 C.F.R. §§ 404.1502, 416.902) (cosigning opinion does not indicate that acceptable medical source "ever examined [claimant]"); Payne v. Astrue, No. 10-cv-1565-JCH, 2011 WL 2471288, at *4–5 (D. Conn. June 21, 2011) (other source opinion cosigned by acceptable medical source was not considered treating source opinion in absence of evidence that acceptable medical source "was ever directly involved in the assessment or treatment of [claimant]" or "worked in close consultation" with claimant); Allen, 2015 WL 906000, at *11 (no special weight owed absent evidence of a "direct treating relationship" with acceptable medical source

---

[3] SSR 06-03p was rescinded as "inconsistent with or unnecessarily duplicative of [the Commissioner's] recent final rules, Revisions to Rules Regarding the Evaluation of Medical Evidence, which were published in the Federal Register on January 18, 2017 (82 Fed. Reg. 5844)." See 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017). Because the rescission is effective "for claims filed on or after March 27, 2017," it does not bear on Claimant's application, which was filed in 2014 and its denial affirmed by the ALJ in 2016. Id.

and no evidence reflected "that [acceptable medical source] was the medical provider who saw [claimant]"). Rather, the treatment plans and medical records were completed by Mr. Barrett alone, see, e.g., [R. 588, 617, 674–76, 741, 779–80, 873, 899–903, 936, 962–67, 1056], by Mr. Barrett and LMHC Korona, see, e.g., [R. 577–587, 589–603, 606–16, 618–32, 641, 653, 670, 725–40, 742–56, 781–90, 885, 897, 904, 948, 960, 967], or by NP Catineau, see, e.g., [R. 767, 772, 777, 909, 915, 972, 978]. Dr. Barkalow only appears in the record as a cosigner of the forms completed by Mr. Barrett and Claimant presents no evidence to the contrary. [R. 759, 1058, 1062].

Although the ALJ erroneously concluded that Dr. Barkalow was not an acceptable medical source, there was no error in the actual weight assigned to the opinions that she cosigned. Claimant asserts that the ALJ "ignored" the evidence at issue [ECF No. 14 at 7], but the ALJ expressly stated that he took the opinions of Mr. Barrett and Dr. Barkalow into account but gave them "less weight to the extent they assert greater limitations than suggested by the contemporaneous medical evidence and the record as a whole." [R. 30]. He explained that the Psychiatric Disorder form was based primarily on Claimant's subjective statements as opposed to the provider's observations. See Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (reasonable to not credit reports by physicians that "relied excessively on claimant's subjective complaints, rather than on objective medical findings"). Moreover, the ALJ found that the record as a whole showed that Claimant consistently presented as focused and engaged, and that Claimant's reports that he participated in child care, meal preparation, household chores, and social events with his extended family contradicted the findings of marked limitations in concentration, persistence, or pace in the Mental RFC Assessment and Disability Listing form. [R. 31]. Although Claimant does not challenge the ALJ's evaluation of the record

14

or the ALJ's conclusion that the record contradicted Mr. Barrett and Dr. Barkalow's opinions, the Court notes that the ALJ's reasoning was supported by the record. See [R. 765−66, 770−71, 775−76] (Claimant's general appearance, speech, thought processes, judgment, insight, memory, attention, and focus were consistently reported as good or normal from October 2014 through December 2014); [R. 781] (on January 15, 2015, Claimant appeared calm and thoughtful and reported that Ativan was helping); [R. 901] (on February 23, 2015, Claimant was "stable" and "cheerful"); [R. 900] (on March 9, 2015, Claimant appeared quiet, somber, calm, and focused); [R. 45−46, 285, 288, 290−92] (Claimant reported that he feeds his children and helps them get ready for school, prepares his own meals, searches for jobs, performs household chores, and socializes with extended family).

Despite overlooking the fact that Dr. Barkalow was an acceptable medical source, the ALJ properly considered Mr. Barrett to be an "other medical source" and it was ultimately appropriate to refrain from attributing Mr. Barrett's opinions to Dr. Barkalow in the absence of evidence of an ongoing treatment relationship between Dr. Barkalow and Claimant. Thus, attributing "less weight" to the evidence at issue was an appropriate and reasoned exercise of the ALJ's discretion. A remand based on the ALJ's oversight will therefore "amount to no more than an empty exercise," and is thus unnecessary. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).

## IV. CONCLUSION

For the reasons stated herein, the Court finds that the ALJ's decision was supported by substantial evidence and therefore DENIES Claimant's motion to reverse and remand [ECF No. 13] and ALLOWS the Commissioner's motion to affirm [ECF No. 15].

**SO ORDERED.**

May 11, 2018                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE